OPINION
{¶ 1} Appellant, Shahara Young, appeals from the March 10, 2008 judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, granting permanent custody of S.Y. ("minor child") to appellee, Ashtabula County Children Services Board. *Page 2 
 {¶ 2} On November 29, 2005, appellee obtained emergency temporary custody of the minor child, d.o.b. July 6, 2003, and G.Y., d.o.b. November 28, 2005.[1] On November 30, 2005, appellee filed a complaint alleging that the minor child was a dependent child pursuant to R.C. 2151.04(D). On December 1, 2005, an emergency shelter care hearing was held and probable cause was found for the removal of the minor child from appellant. Temporary custody of the minor child remained with appellee. Jodi M. Blankenship ("GAL") was appointed as the minor child's guardian ad litem.
 {¶ 3} A case plan was filed on December 8, 2005. An adjudicatory hearing was held on December 12, 2005. Appellant was present and the parties stipulated to a finding of dependency. A dispositional hearing was held on February 8, 2006. The trial court adopted the case plan and ordered that the minor child remain in the temporary custody of appellee.
 {¶ 4} On February 8, 2007, appellee filed a motion requesting modification of temporary custody to permanent custody.[2]
 {¶ 5} On December 6, 2007, the GAL filed her report in which she recommended that appellee be granted permanent custody of the minor child, and a permanent custody *Page 3 
hearing was held.[3]
 {¶ 6} At that hearing, Cailin McMahon ("McMahon"), a caseworker with appelleee, testified for appellee that she received the case in December of 2005. McMahon described appellant's compliance with the case plan as "moderate." She stated that appellant completed most of the requirements (i.e., adequate housing, currently seeking employment, counseling, etc.), but failed to comply with the drug issue.
 {¶ 7} Specifically, McMahon said that in January of 2006, appellant completed a drug and alcohol assessment at LARC. The recommendation was for out-patient treatment at Step Stones. While in that program, appellant tested positive for cocaine three times and was placed in an inpatient program at Turning Point from March of 2006 until May of 2006, when she was discharged for disruptive behavior. On her own, appellant then went to North Coast Center for another assessment. The recommendation there was for intensive outpatient treatment. Appellant completed the program and followed the aftercare recommendations. She continued to test positive for cocaine, so she began counseling at Community Counseling Center. Because she continued to test positive for cocaine, appellant went to the Hitchcock Center for Women. She completed the program, and was there from April of 2007 to June of 2007. Appellant then went back to Community Counseling Center. Although she no longer tested positive for cocaine, she tested positive and admitted to using marijuana. McMahon stated that appellee filed two six-month extensions in order to give appellant more time to maintain sobriety so that reunification *Page 4 
could take place. McMahon believed that the minor child needs a legally secure permanent placement, which cannot be achieved without a grant of permanent custody to appellee.
 {¶ 8} Katie Balog ("Balog"), a visitation supervisor for Rooms to Grow, testified for appellee that appellant and the minor child went for visits since December of 2005. A total of eighty visits were scheduled, and seventy-two were attended. Balog stated that one was cancelled due to appellant's aggressive behavior. She said that appellant had a good rapport with the minor child.
 {¶ 9} Fatima Beck ("Beck"), a case manager with Community Counseling Center, testified for appellant that appellant had obtained Section 8 housing. Beck stated that appellant saw a therapist and a psychiatrist. Beck indicated that appellant was cooperative, she helped her apply for employment, and she was open to suggestions.
 {¶ 10} On cross-examination, Beck testified that appellant told her that she was using marijuana.
 {¶ 11} Dawson Knight ("Knight"), alcohol and/or drug counselor with Community Counseling Center, testified for appellant that he became acquainted with appellant from anger management and relapse prevention classes. Knight stated that appellant's progress in the anger management class was very good, and that she struggled a bit in the relapse prevention class. Knight said that there was no indication that appellant had used cocaine for over six months, which was a "big step" from where she had once been.
 {¶ 12} On cross-examination, Knight said that appellant was diagnosed as being chemically dependent, and he was concerned with her continued use. He discussed with appellant the problem of trading one drug for another. Knight said that appellant's goal was to maintain sobriety and regain custody of the minor child. *Page 5 
 {¶ 13} According to appellant, although she sought a job, she remained unemployed. She testified that she was seeing a counselor at Community Counseling Center. Appellant believed she was a good mother. She loves the minor child and wants to take care of him. Appellant indicated the last time she used marijuana was around November 14, 2007, and does not plan to keep using it, due to all of the problems that it has caused.
 {¶ 14} According to the magistrate's February 12, 2008 decision, she granted appellee permanent custody of the minor child. Appellant filed objections to the magistrate's decision on February 28, 2008.
 {¶ 15} Pursuant to its March 10, 2008 judgment entry, the trial court overruled appellant's objections and adopted the magistrate's February 12, 2008 decision. The trial court granted appellee's motion requesting modification of temporary custody to permanent custody. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 16} "The trial court erred in granting the motion for permanent custody as such decision was against the manifest weight of the evidence and resulted in a manifest miscarriage of justice."
 {¶ 17} In her sole assignment of error, appellant argues that the trial court's decision, granting appellee's motion for permanent custody, was against the manifest weight of the evidence. She presents two issues for review: (1) The trial court erred in determining by clear and convincing evidence that it was in the best interests of the minor child to grant permanent custody to appellee when the trial court failed to consider the wishes of the child under R.C. 2151.414(D)(2); and (2) The trial court's conclusions pursuant to *Page 6 
R.C. 2151.414(D)(4) were not supported by clear and convincing evidence that it was in the best interests of the minor child to grant permanent custody to appellee.
 {¶ 18} Because appellant's two issues are interrelated, we will address them together.
 {¶ 19} Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226, states:
 {¶ 20} "* * * [J]udgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279 * * *, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77 * * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v. Ross (1980), 64 Ohio St.2d 203 * * *." (Parallel citations omitted.)
 {¶ 21} R.C. 2151.414 sets forth guidelines which a juvenile court must follow. Specifically, R.C. 2151.414(B)(1) establishes a two-pronged analysis and permits the juvenile court to grant permanent custody of the child to the agency if the court determines by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply:
 {¶ 22} "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. *Page 7 
 {¶ 23} "(b) The child is abandoned.
 {¶ 24} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 25} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *."
 {¶ 26} Here, pursuant to the magistrate's February 12, 2008 decision, which was adopted by the trial court on March 10, 2008, the magistrate indicated that the minor child "has been in the [t]emporary [c]ustody of [appellee] for 12 months or more of a consecutive 22 months period." R.C. 2151.414(B)(1)(d).
 {¶ 27} Next, the magistrate and the juvenile court proceeded to the second prong of the statutory analysis, to wit: the determination that it is in the best interest of the minor child to grant permanent custody to appellee. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the trial court must consider all relevant factors, including, but not limited to, the following:
 {¶ 28} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 29} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 30} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private *Page 8 
child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
 {¶ 31} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 32} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 33} We have consistently held that the provisions of R.C. 2151.414(D) are mandatory and "`must be scrupulously observed.'" In reKelley, 11th Dist. No. 2002-A-0088, 2003-Ohio-194, at ¶ 24, quotingIn re Hommes (Dec. 6, 1996), 11th Dist. No. 96-A-0017, 1996 Ohio App. LEXIS 5515, at 4. See, also, In re Litz, (Nov. 5, 2001), 11th Dist. No. 2001-G-2367, 2001 Ohio App. LEXIS 5061, at 14; In re Ranker (Oct. 6, 2000), 11th Dist. No. 99-P-0072, 2000 Ohio App. LEXIS 4662, at 21;In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, at 12; In re Ethington (July 23, 1999), 11th Dist. No. 98-T-0084, 1999 Ohio App. LEXIS 3419, at 8; In re Alexander (Dec. 19, 1997), 11th Dist. No. 96-T-5510, 1997 Ohio App. LEXIS 5742, at 7.
 {¶ 34} In the case at bar, the magistrate's decision listed the factors set forth in R.C. 2151.414(D)(1) through (5), and acknowledged that it was required to consider all of these factors. Both the magistrate's decision and the trial court's judgment entry stated that the factors contained in R.C. 2151.414(D) were considered, and that the best interests of the minor child would be served by a grant of permanent custody to appellee. *Page 9 
 {¶ 35} The sixteen page magistrate's decision, which was adopted by the trial court, does address and discuss each of the statutory factors contained in R.C. 2151.414(D)(1) through (5).
 {¶ 36} Pursuant to R.C. 2151.414(D)(1), the magistrate stated that the minor child has visited appellant regularly but has had no contact with a half sibling or any other relative.
 {¶ 37} With regard to R.C. 2151.414(D)(2), the magistrate's decision reflects the wishes of the minor child as expressed directly by him or through the GAL with due regard for his maturity. The magistrate stated that the minor child was of tender years and could not speak for himself, although we note again that the GAL reported that through her interview, the minor child indicated that he wanted to live with his foster mother. The magistrate said that the GAL indicated that it would be in the minor child's best interest to be placed in the permanent custody of appellee.
 {¶ 38} With respect to R.C. 2151.414(D)(3), the magistrate's decision discusses the custodial history of the minor child, including that he resided with appellant from birth until he was placed in appellee's custody on November 29, 2005. The minor child was placed in foster care, where he continues today.
 {¶ 39} Pursuant to R.C. 2151.414(D)(4), the magistrate's decision indicates that the minor child needs a legally secure and permanent placement and that the evidence shows that this can only be achieved by a granting of permanent custody to appellee.
 {¶ 40} Regarding R.C. 2151.414(D)(5), the magistrate addressed whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to appellant and the minor child. The magistrate stated that those factors were not applicable here. *Page 10 
 {¶ 41} The trial court properly considered the wishes of the minor child, with due regard for his maturity. Also, although appellant complied with the case plan to the best of her ability, she continued to use illegal drugs throughout the two years of appellee's involvement in this case. Even after being granted an extension in November of 2006, and a continuance of the permanent custody hearing in May of 2007, appellant continued to use illegal drugs. The finding of the trial court was not against the manifest weight of the evidence, as appellee proved by clear and convincing evidence that it was in the best interests of the minor child to grant permanent custody to appellee.
 {¶ 42} Appellant's first and second issues are without merit.
 {¶ 43} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed. It is the further order of this court that costs are waived since appellant appears from the record to be indigent. The court finds that there were reasonable grounds for this appeal.
CYNTHIA WESTCOTT RICE, J., MARY JANE TRAPP, J., concur.
[1] The original referral to appellee was made because G.Y. tested positive for cocaine at birth. Appellant signed a permanent surrender of G.Y. after his birth and he was adopted. G.Y. is not part of the instant appeal. The minor child and G.Y. have different natural fathers. The minor child's natural father, Joshua Annick, was contacted during the pendency of the proceedings but failed to appear or otherwise participate, and was ultimately determined to have abandoned the minor child.
[2] Appellee notes, and the record reflects, that it requested and was granted a six month extension of temporary custody to give appellant additional time past the one-year mark to achieve reunification with the minor child prior to filing the motion for permanent custody.
[3] In her report, the GAL indicated that appellant has anger management issues and substance abuse concerns. The GAL stated that although appellant willingly participated in drug treatment programs and counseling, she continuously had positive drug screens and admitted to drug use even after completing treatment programs. Appellant admitted to drug use and/or had positive screens at least twenty-five different times. The GAL interviewed the minor child, who indicated that he wanted to live with "Grandma" (which is what he calls his foster mother.) *Page 1