OPINION
{¶ 1} Appellants, Sandra Juncker and Desi McCandies, appeal the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, granting permanent custody of their two minor children to appellee, Ashtabula County Children Services Board ("Children Services Board"). *Page 2 
 {¶ 2} Appellants are the biological parents of two children, P.J. (born in 2005) and D.M. (born in 2006). The children resided with their mother, Sandra, in Ashtabula County, Ohio. The children's father, Desi, is currently incarcerated in North Carolina.
 {¶ 3} In addition to the two children at issue in the instant appeal, Sandra has two other children, K.J. (born in 2002), whose biological father is Brandon Harden, and A.J. (born in 2004), whose biological father is Terry Hanger, Jr. A.J.'s biological father was granted legal custody on November 14, 2007, and K.J. was placed with his biological father in North Carolina.
 {¶ 4} On November 22, 2006, the Children Services Board filed a verified complaint for protective supervision. The complaint alleged that P.J. appears to be neglected as defined in R.C. 2151.03(A)(2). Further, the complaint stated that while pregnant with D.M., Sandra had three positive drug screens, to wit: 7/13/06, positive for THC; 10/31/06 and 11/7/06, positive for cocaine.
 {¶ 5} The Children Services Board was granted protective supervision of the minor children and, thereafter, emergency temporary custody.
 {¶ 6} On January 30, 2007, Sandra stipulated to probable cause existing at the time of the removal of the children from the home.
 {¶ 7} A case plan was developed on February 6, 2007 for the parents of P.J. and D.M. On February 12, 2007, the children were adjudicated dependent.
 {¶ 8} On October 2, 2007, the Children Services Board filed a motion for permanent custody, and the motion was granted at a hearing on January 30, 2008. At the hearing, the following individuals testified: Heather Wiley, a caseworker from the Children Services Board; Gloria Hudnell, a senior counselor at Lake Area Recovery *Page 3 
Clinic; and Kathleen Welch, the foster mother of P.J. and D.M. Neither appellant attended the hearing.
 {¶ 9} According to the testimony of Ms. Wiley, Sandra had moved to Florida and had not contacted her children since April 20, 2007 and, further, Sandra has had minimal involvement with working the case plan since she moved out of the state of Ohio. In addition, Ms. Wiley testified that prior to his incarceration in April 2007, Desi had not complied with any aspects of the case plan, including refusing to complete a drug screen and not attending any of the visits scheduled with his children at Rooms to Grow. Moreover, she indicated that Desi will be incarcerated for at least four more years.
 {¶ 10} When the children were placed in the custody of the Children Services Board, D.M. was approximately one month old and P.J. was approximately one year old. Initially, the children were placed with a maternal aunt but, because of health reasons, the children were moved to a foster home, where they since have remained.
 {¶ 11} Ms. Wiley stated that Sandra, in July 2007, requested that an interstate home study be completed on Ms. Faye Partee, a paternal aunt residing in North Carolina. Ms. Partee did not respond.
 {¶ 12} Then, on November 20, 2007, Ms. Partee requested an interstate home study. Ms. Wiley testified that, in November 2007, she received notification from Columbus that they received the interstate home study, and it would be transferred to North Carolina. As of the date of the hearing, she had not spoken with Ms. Partee.
 {¶ 13} Gloria Hudnell, a senior counselor at Lake Area Recovery Clinic, stated that Sandra was diagnosed with cannabis dependence and cocaine abuse, and *Page 4 
although she attended three, one-hour counseling sessions, she never returned to the clinic for counseling.
 {¶ 14} Kathryn Balog, the visitations supervisor at Rooms to Grow, testified that Sandra attended nine of the scheduled 16 visits, while Desi did not attend any of the scheduled visits.
 {¶ 15} Kathleen Welch, the foster mother, stated that the children began living with her family when D.M. was four months and P.J. was 15 months. The children have lived with the foster parents for approximately ten months. Ms. Welch expressed an interest in adopting the children. At the time the children began living with her family, P.J. was experiencing social anxiety and delayed speech; however, she is progressing well. Further, Ms. Welch indicated that Sandra has not had any contact with the children since April 2007.
 {¶ 16} The magistrate filed her decision on January 30, 2008, recommending that the Children Services Board be granted permanent custody of the children. The magistrate found that Sandra and Desi have failed continuously and repeatedly to substantially remedy the conditions which initially caused the children to be placed outside of the home. Further, the magistrate determined that Sandra demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children and has demonstrated an unwillingness to provide an adequate, permanent home for them. It was determined that Sandra abandoned the children. Desi is currently incarcerated and will be unavailable to care for the children for at least 18 months after the filing of the motion for permanent custody or dispositional hearing. *Page 5 
 {¶ 17} The magistrate also found that the granting of permanent custody to the Children Services Board was in the best interest of the children.
 {¶ 18} Both Sandra and Desi filed objections to the magistrate's decision.
 {¶ 19} On July 10, 2008, the juvenile court overruled appellants' objections and adopted the magistrate's decision as the judgment of the court.
 {¶ 20} Appellants filed timely notices of appeal. Desi asserts the following assignments of error:
 {¶ 21} "[1.] The trial court abused its discretion and denied Desi McCandies due process of law and equal protection of the law when it denied his motion to continue the trial to allow for the completion of an interstate investigation of a paternal relative.
 {¶ 22} "[2.] The trial court abused its discretion and denied Desi McCandies due process of law when it found that the Ashtabula County Children Services Board was unable to find a suitable relative after the Ashtabula County Children Services Board's case planning did not follow Ohio statutory law."
 {¶ 23} Sandra asserts the following assignment of error:
 {¶ 24} "The trial court erred in granting the motion for permanent custody as such decision was against the manifest weight of the evidence and resulted in a manifest miscarriage of justice."
 {¶ 25} We recognize that the termination of parental rights is "* * * the family law equivalent of the death penalty * * *." In rePhillips, 11th Dist. No. 2005-A-0020, 2005-Ohio-3774, at ¶ 22, citingIn re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, at ¶ 14. This court has stated that a parent is entitled to "fundamentally fair procedures in accordance with due process provisions of the Fourteenth Amendment to the *Page 6 
United States Constitution and Section 16, Article I of the Ohio Constitution."In re Sheffey, 167 Ohio App.3d 141, 2006-Ohio-619, at ¶ 21.
 {¶ 26} Former R.C. 2151.414(B)(1) set forth the applicable standard for determining the motion for permanent custody in the instant case. This section provided:
 {¶ 27} "* * * [T]he court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 28} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 29} "(b) The child is abandoned.
 {¶ 30} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 31} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." Former R.C. 2151.414(B)(1)(a)-(d).
 {¶ 32} To establish that the children cannot be placed with a parent within a reasonable time frame, a court must determine, by clear and convincing evidence, that *Page 7 
at least one of the statutory factors is applicable under R.C. 2151.414(E). For purpose of the instant appeal, it is uncontested that R.C. 2151.414(E)(12) is pertinent, which states:
 {¶ 33} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing."
 {¶ 34} To determine the child's best interest, the trial court was required to consider all relevant factors, including but not limited to:
 {¶ 35} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 36} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 37} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 38} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; *Page 8 
 {¶ 39} "(5) Whether any of the factors in divisions (E)(7) to (11)[1] of this section apply in relation to the parents and child." Former R.C. 2151.414(D)(1)-(5).
 {¶ 40} "`(J)udgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, * * *, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, * * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v. Ross *Page 9 
(1980), 64 Ohio St.2d 203. * * *.'" In re S.Y., 11th Dist. No. 2008-A-0023, 2008-Ohio-4512, at ¶ 20. (Parallel citations and citation omitted.)
 {¶ 41} On appeal and for the purpose of our analysis, we will consolidate an argument propounded under Desi's first assignment of error with Sandra's sole assignment of error. In essence, both parties argue that the trial court should have granted the requested continuance of the dispositional hearing until the Children Services Board completed the interstate home study of Ms. Partee. We disagree.
 {¶ 42} As stated by the Supreme Court of Ohio, a juvenile court is under no duty to "find by clear and convincing evidence that no suitable relative was available for placement" before terminating parental rights. In re Schaefer, 111 Ohio St.3d 498, 2006-Ohio-5513, at ¶ 64.
 {¶ 43} "The statute requires a weighing of all the relevant factors * * *. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." Id.
 {¶ 44} "Relatives who seek the placement of a child are not afforded the same presumptive rights that a natural parent receives as a matter of law. * * * Rather, the juvenile court is vested with discretion to determine what placement option is in the child's best interest. * * *"In re Dyal (Aug. 9, 2001), 4th Dist. No. 01CA11, 2001 Ohio App LEXIS 3582, at *10. (Internal citations omitted.) *Page 10 
 {¶ 45} In the instant case, the record supports the finding of the juvenile court that it was in the best interests of the children to grant permanent custody to the Children Services Board. The evidence illustrates that Ms. Partee did not contact the Children Services Board until November 20, 2007, several weeks after the permanent custody motion had been filed and almost ten months after the children were removed from the home. Although the Children Services Board is investigating the possibility of placement of the children with Ms. Partee, the termination of appellants' parental rights does not affect her suitability as a potential placement for the children. Since Sandra and Desi have not put forth a compelling reason as to why the trial court should have held the hearing in abeyance until the interstate home study was completed, we decline to find merit in this argument and, therefore, Sandra's sole assignment of error is overruled.
 {¶ 46} Desi also argues, under his first assignment of error, that he was denied procedural due process as a result of his absence from the hearing, based upon the juvenile court's denial of his motion to present evidence by telephone.
 {¶ 47} "Fundamental liberty interest of natural parents in care, custody and management of their child is protected by theFourteenth Amendment, and does not evaporate simply because they have not been model parents or have lost temporary custody of their child to State."Santosky v. Kramer (1982), 455 U.S. 745, at paragraph one of the syllabus.
 {¶ 48} The standard to use to determine if an incarcerated parent should be present at a permanent custody hearing should be based on "the best interest of the child or children involved. It is almost always in the best interest of the child to have the *Page 11 
parent attend and testify in person in a permanent custody hearing. In making a well reasoned and informed decision, a trial court is best served by having available as much information as possible. All things being equal, the testimony from a parent would provide more information than not having the parent." In re Vandale (Aug. 12, 1992), 4th Dist. No. 92 CA 9, 1992 Ohio App. LEXIS 4306, at *5-6.
 {¶ 49} Further, the Supreme Court of the United States, in Mathews v.Eldridge (1976), 424 U.S. 319, 334, set forth the following legal standard for the following three criteria to evaluate due process rights:
 {¶ 50} "[1] [T]he private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
 {¶ 51} As to the first criteria set forth in Mathews, "[i]t is well established that a parent's right to raise a child is an essential and basic civil right." In re Phillips, 2005-Ohio-3774, at ¶ 22, citingIn re Hayes (1997), 79 Ohio St.3d 46, 48. Further, as previously recognized, Desi's fundamental liberty interest in the care, custody, and management of P.J. and D.M. did not dissolve because he was not a model parent or was incarcerated.
 {¶ 52} Next, we analyze the second factor under Mathews. At the outset, a review of the record reveals that Desi's counsel failed to object to his lack of presence at the hearing. Nevertheless, based on the evidence, we determine that Desi cannot demonstrate a risk of erroneous deprivation of his private interest in not attending the *Page 12 
hearing. Desi will remain incarcerated for approximately the next four years and, therefore, there is no possibility of placing P.J. and D.M. with him within any reasonable time frame. Further, Desi was represented by counsel at the hearing; counsel cross-examined witnesses; and counsel presented evidence through exhibits and stipulations on the record. In addition, during the proceedings, the juvenile court allowed a recess so that Desi's counsel could contact him to consult with him regarding the proceedings. Accordingly, Desi has not demonstrated any prejudice as a result of his absence.
 {¶ 53} Under the third factor of Mathews, we must consider the government's interest. "Two state interests are at stake in parental rights termination proceedings — a parens patriae interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings."Santosky, 455 U.S. at 766. Although Desi has failed to make any reference to this third factor in his brief, we note that the record illustrates that he cannot and will remain unable to provide care for his children. Therefore, the state has a significant interest in finding the children an alternative permanent home. Id.
 {¶ 54} Based on the foregoing, Desi's due process rights were met, and the juvenile court did not err in overruling his motion to present evidence by telephone.
 {¶ 55} Also under his first assignment of error, Desi asserts an equal protection claim arguing that the trial court erred in treating his children, whose relatives lived out of the state of Ohio, unequal to K.J. and A.J., whose relatives reside within the state of Ohio. We disagree.
 {¶ 56} In general, "`[a] person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in *Page 13 
a particular class, not merely that he was treated unfairly as an individual.'" Hill v. Croft, 10th Dist. No. 05AP-424, 2005-Ohio-6885, at ¶ 16. (Citation omitted.) "A `class of one,' however, may appropriately maintain an equal protection claim where the plaintiff alleges both that the state treated the plaintiff differently from others similarly situated and that no rational basis exists for such difference in treatment." Meyers v. Columbus Civ. Serv. Comm., 10th Dist. No. 07AP-958, 2008-Ohio-3521, at ¶ 18. (Citations omitted.)
 {¶ 57} Desi has not produced any evidence which illustrates that K.J. and A.J. are similarly situated in all respects. Id. at ¶ 19. (Citations omitted.) In fact, the record indicates that the Children Services Board moved to terminate protective supervision of A.J., since legal custody was placed with her biological father, and K.J. was placed with his biological father in North Carolina. In addition, Desi has failed to produce any evidence or make any argument in his brief that the action taken by the government in the instant case lacked a rational basis. Therefore, we find this argument to be without merit, and Desi's first assignment of error is overruled.
 {¶ 58} In his second assignment of error, Desi contends that the Children Services Board did not follow Ohio statutory law and, therefore, it was an abuse of discretion for the juvenile court to terminate his parental rights and award permanent custody to the agency. Specifically, Desi maintains that Ms. Wiley failed to contact him while incarcerated, and this constituted bad faith in case planning. The evidence in the record demonstrates that the case planning amendment was filed with the juvenile court. Further, it is uncontested that Desi is incarcerated and would not be available to care for the children for at least 18 months after the filing of the motion for permanent *Page 14 
custody or the disposition hearing, pursuant to R.C. 2151.414(E)(12). As a result, this argument is moot since, even if Desi completed the case plan, the children could not be placed with him due to his lengthy term of incarceration.
 {¶ 59} Under this assignment of error, Desi also maintains that the testimony of Ms. Wiley lacked credibility. However, we note that the trier of fact is in the best position to weigh the evidence and the credibility of a witness. State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. Desi's second assignment of error is without merit.
 {¶ 60} The judgment of the Ashtabula County Juvenile Court is hereby affirmed.
MARY JANE TRAPP, P.J., concurs,
COLLEEN MARY OTOOLE, J., dissents with Dissenting Opinion.
[1] Former R.C. 2151.414(E)(7)-(11) stated:
"(7) The parent has been convicted of or pleaded guilty to one of the following:
"(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
"(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
"(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
"(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
"(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
"(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
"(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
"(10) The parent has abandoned the child.
"(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."