[Cite as *In re S.I.M.*, 2020-Ohio-162.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

IN THE MATTER OF: S.I.M.          :          **O P I N I O N**

:

CASE NO. 2019-P-0100

Civil Appeal from the Portage County Court of Common Pleas, Juvenile Division, Case No. 2019 JCF 00456.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee, Portage County Department of Job and Family Services).

*Cecily J. Mullins*, Megargel, Eskridge & Mullins, LLP, 231 South Chestnut Street, Ravenna, OH 44266 (For Appellant, Terrence Miller).

*Patricia J. Smith*, 206 South Meridian Street, Suite A, Ravenna, OH 44266 (Guardian ad litem).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Terrence Miller ("Miller"), appeals from the August 30, 2019 judgment of the Portage County Court of Common Pleas, Juvenile Division, terminating Miller's parental rights and granting permanent custody of his child, S.I.M., to appellee, Portage County Department of Job and Family Services ("PCDJFS"). The child's mother was also permanently divested of her parental rights. At issue on appeal is whether the trial court erred in denying Miller's request to be transported to the court for the hearing;

whether it was an abuse of discretion to deny Miller's oral request, made through counsel, for a continuance; and whether Miller was denied his constitutional right to effective assistance of counsel. The judgment is affirmed.

{¶2} S.I.M. was born on March 31, 2017. At his birth, Mother Melanie Ward ("Mother") turned over custody of the child to Open Arms Adoption Agency. S.I.M. was placed in the home of Jason and Julana Yoder ("the Yoders") at three weeks of age. Mother initially surrendered her parental rights; however, she later revoked the surrender.

{¶3} Thereafter, Miller opposed the adoption and filed a complaint to establish paternity on May 2, 2017. Also, PCDJFS filed a dependency, neglect, and abuse complaint on July 20, 2018. As a result, Miller established paternity as the father of S.I.M., and S.I.M. was determined to be a dependent child. Temporary custody was granted to PCDJFS, and the Yoders maintained placement of the child.

{¶4} On June 21, 2019, PCDJFS filed a motion for permanent custody of S.I.M. Ten days prior to the permanent custody hearing, Miller filed a motion with the court requesting to be transported from Lorain Correctional Facility so that he could be present at the hearing. The court denied the motion the same day. Counsel for Miller renewed the motion orally at the hearing and also made an oral motion for a continuance. The basis for the continuance motion was (1) so Miller could be present at the hearing, and (2) so a paternal aunt, Javon White ("Javon"), could file a motion to be considered for custody of the child. The trial court denied both motions, and the hearing proceeded on August 26, 2019.

{¶5} At the hearing, Mother did not appear, but she was represented by counsel. Her counsel indicated that Mother's wishes were that S.I.M. be adopted by the Yoders,

2

and she would be willing to surrender parental rights of S.I.M. unless custody was granted to a member of the Miller family. A granting of custody directly to the Yoders was not an option at the hearing held on a motion for permanent custody filed by PCDJFS, so Mother's counsel indicated that she would not voluntarily surrender her parental rights.

{¶6} The only witness called by PCDJFS was caseworker Kaleigh Wallace ("Wallace"). She testified regarding S.I.M.'s current well-being, his relationship with Miller, the Yoders, and Mother, and the agency's process in placing the child. She stated that S.I.M. was bonded to the Yoders and the foster-siblings in the Yoder household. To the contrary, she stated that S.I.M. was not bonded to either Miller or Mother despite 13 visits with the child by Miller as part of the case plan during the pendency of the dependency, neglect and abuse case.

{¶7} Wallace stated that both biological parents had issues with substance abuse for which they failed to successfully complete treatment despite receiving resources and guidance from PCDJFS. Miller was incarcerated at the time of the permanent custody hearing for offenses related to drug trafficking and aggravated assault. Wallace also stated that Miller's engagement with the case plan was minimal.

{¶8} Wallace also testified at length regarding a paternal aunt, Javon, who had not taken any steps to intervene in the matter but had made it known to Wallace that she was interested in seeking placement—and possibly custody—of S.I.M. Miller brought up Javon's name for possible placement for the first time on July 12, 2019, following a hearing, and Javon contacted Wallace on July 15, 2019, regarding S.I.M. A home study was conducted, which found Javon to be suitable for placement; however, no visits with

3

her nephew were ever offered.  Explaining why no visits were offered, Wallace testified as follows:

> [COUNSEL]:  And since Dad gave you Javon's name and Javon did cooperate with the agency regarding her assessments, correct?
>
> [WALLACE]:  Yes.  She did come in and fingerprint.  I had actually met her up in the office to give her the form so she could fingerprint and spoke with her briefly.
>
> [COUNSEL]:  And no visits were offered to her, correct?
>
> [WALLACE]:  Um, not at this time because by the time we had got in contact with her we had already had [the motion for permanent custody] filed and scheduled and to try to disrupt [S.I.M.] as least [sic] as possible.  I didn't want to put all this time and energy and effort into traumatizing him with a third new person in his life when ultimately he is with family.  There's no other reason to look into additional family.
>
> [COUNSEL]:  Well, custody to Javon would be the least restrictive as far as terminating parents' rights are concerned, correct?
>
> [WALLACE]:  Least restrictive in terms of paperwork, but least restrictive in terms of keeping him with family and the life that he has known for almost two and a half years and where he's bonded and comfortable and safe and striving, no.
>
> [COUNSEL]:  Now, I notice you keep calling the Yoders family.  That's because he was placed there, but he is really not related to either of the parents, correct?
>
> [WALLACE]:  We consider kinship either nonrelative or relative.  Um, for all purposes of this job we keep it the same.  I've had kinship be family friends, um, best friend's parents, best friend's moms, dads, coaches.  Kinship is kinship.  There's no—we don't look at it any differently.  We consider kinship who knows this child and who's best for them.
>
> [COUNSEL]:  And again the Yoders are not related to the parents.  They're not friends.  They're not friends of friends, is that correct?
>
> [WALLACE]:  They're nonrelative kinship because they have a relationship with [S.I.M.] * * *

4

{¶9} Finally, Wallace indicated in her testimony that PCDJFS was of the opinion that S.I.M. should be adopted by the Yoders once the agency is granted permanent custody. The guardian ad litem also submitted a report and recommendation concluding that it is in the best interest of S.I.M. to be placed with the Yoders and for PCDJFS to be awarded permanent custody.

{¶10} On August 30, 2019, the trial court granted PCDJFS's motion for permanent custody and terminated the parental rights of both parents. It was determined that both Mother and Miller abandoned the child. Further, placement with Miller within a reasonable time was not possible under R.C. 2151.414(E)(12), as he is currently incarcerated and will be unavailable to care for the child for at least 18 months after the filing of the motion for permanent custody or the dispositional hearing.

{¶11} The court also found Javon to be inappropriate for custody of S.I.M. Regarding Javon's status and the motion for continuance made by Miller's counsel, the court found as follows:

> [23.] Terrence E. Miller suggested at the last review hearing on July 12, 2019 that his father, Ricky Rellifond, or his sisters, Javon White or Tiyanna Miller, could be custodians for S.I.M. The case worker, Kaleigh Wallace, contacted Mr. Miller's relatives and only Javon Miller expressed interest. Prior to July 12, 2019, all of PCDJFS' efforts to contact relatives of friends led to no appropriate persons;
>
> [24.] Javon White has had no contact with S.I.M. and has not sought visitation with S.I.M. A home study was complete [sic] for her on August 5, 2019 and her home was found to be safe and suitable. Javon White has Section 8 housing and lives with her two children (age 2 and 5 years old). Javon White has not attended a team meeting and PCDJFS finds her not to be appropriate for custody of S.I.M.;
>
> [25.] Prior to the dispositional hearing, no relative or other interested persons (other than the Yoders) have filed or have been identified in a motion for legal custody of S.I.M.;

5

[26.] Javon White has not made an appearance in Court or filed any pleadings;

[27.] Although Terrence Miller's counsel moved for a continuance of the Permanent Custody hearing to allow Javon White to file a pleading, the Motion was denied as not being in the best interest of S.I.M. to delay ruling on his future and because of the dilatory nature of such a motion in view of the length of this case and Terrence Miller's knowledge of arrest warrants and his likely incarceration as long as 9 months ago;

{¶12} Miller noticed a timely appeal and asserts three assignments of error for our review.

{¶13} Miller's first assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT DENIED HIS MOTION TO BE TRANSPORTED TO THE PERMANENT CUSTODY HEARING.

{¶14} Miller first argues he was denied procedural due process as a result of his absence from the hearing, based upon the trial court's denial of his motion to transport him from Lorain Correctional Facility.

{¶15} We recognize that "the permanent termination of parental rights has been described as the family law equivalent of the death penalty * * *." *In re Phillips*, 11th Dist. Ashtabula No. 2005-A-0020, 2005-Ohio-3774, ¶22, citing *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, ¶14. This court has stated that a parent is entitled to "fundamentally fair procedures in accordance with the due process provisions under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution." *In re Sheffey*, 167 Ohio App.3d 141, 2006-Ohio-619, ¶21 (11th Dist.).

{¶16} "'Fundamental liberty interest of natural parents in care, custody and management of their child is protected by the Fourteenth Amendment, and does not

6

evaporate simply because they have not been model parents or have lost temporary custody of their child to State." *In re P.J.*, 11th Dist. Ashtabula Nos. 2008-A-0047, 2008-A-0053, 2009-Ohio-182, ¶47, quoting *Santosky v. Kramer*, 455 U.S. 745 (1982), paragraph one of the syllabus. However, "even though those same rights extend to an incarcerated parent, those rights may not be absolute." *In re Maciulewicz*, 11th Dist. Ashtabula No. 2002-A-0046, 2002-Ohio-4820, ¶14 (citations omitted).

{¶17} The standard to use to determine if an incarcerated parent should be present at a permanent custody hearing should be based on "the best interest of the child or children involved. It is almost always in the best interest of the child to have the parent attend and testify in person in a permanent custody hearing. In making a well reasoned and informed decision, a trial court is best served by having available as much information as possible. All things being equal, the testimony from a parent would provide more information than not having the parent."

*In re P.J.*, *supra*, at ¶48, quoting *In re Vandale*, 4th Dist. Washington No. 92 CA 9, 1992 WL 208903, *2 (Aug. 12, 1992).

{¶18} "In lieu of appearance, the trial court may make other arrangements so a parent can witness and participate in the hearing, guaranteeing that parent's rights to due process and confrontation of witnesses." *In re Roque*, 11th Dist. Trumbull No. 2005-T-0138, 2006-Ohio-7007, ¶18, citing *Sheffey*, *supra*, at ¶12, fn. 1. However, no other arrangements were proposed by Miller for the trial court to consider in this matter.

{¶19} Because the rights extending to an incarcerated parent are not absolute, we analyze Miller's due process claim under the *Mathews* standard. The Supreme Court of the United States, in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), set forth the following legal standard utilizing three criteria to evaluate due process rights:

[1][T]he private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards; and [3] the Government's interest, including the function involved the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

{¶20} As to the first criteria set forth in *Mathews*, "[i]t is well established that a parent's right to raise a child is an essential and basic civil right." *Phillips*, *supra*, at ¶22, citing *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). Further, as previously recognized, Miller's fundamental liberty interest in the care, custody, and management of S.I.M. did not dissolve because he was not a model parent or was incarcerated. Therefore, the first factor weighs in favor of Miller.

{¶21} Next, we analyze the second factor under *Mathews*. Based on the evidence, we determine that Miller cannot demonstrate a risk of erroneous deprivation of his private interest in not attending the hearing. Miller will remain incarcerated for at least the next two years, and, therefore, there is no possibility of placing S.I.M. with him within any reasonable time frame. Further, Miller was represented by counsel at the hearing, who represented his interests in having Javon considered for placement of S.I.M., cross-examined the lone witness presented by PCDJFS, and made motions and objections on the record. Accordingly, Miller has not demonstrated any prejudice as a result of his absence. The second factor weighs against Miller.

{¶22} Under the third *Mathews* factor, we must consider the government's interest. "'Two state interests are at stake in parental rights termination proceedings—a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings.'" *In re P.J., supra*, at ¶53, quoting *Santosky, supra*, at 766. Here, the record illustrates Miller cannot and will remain unable to provide care for S.I.M. The child has been with the

8

Yoders for nearly his entire life, beginning three weeks after his birth. The proceedings have been ongoing for over two years, and Miller failed to identify any suitable relative for placement until weeks after the motion for permanent custody was filed and roughly a month before the dispositional hearing. Of those three family members identified, only one expressed interest in placement—and possibly custody—and no motions were filed by that relative as of the permanent custody hearing.

{¶23} Therefore, the state has a significant interest, considering both the welfare of the child and the fiscal and administrative interests, in finding S.I.M. an alternative permanent home without further delay. The third factor weighs against Miller.

{¶24} Nothing was placed on the record or brought to the attention of the trial court that described why Miller's participation in the hearing was necessary. That being said, in the future, it should be incumbent on the parties and/or the trial court to explore alternatives to physical presence, such as a telephone conference call. In this case, however, based on the length of Miller's incarceration and the lack of any reason why his participation would have affected the outcome, we cannot say Miller's due process rights were violated. The trial court did not err in overruling his motion to be transported for the hearing.

{¶25} Miller's first assignment of error has no merit.

{¶26} Miller's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR A CONTINUANCE OF THE PERMANENT CUSTODY HEARING.

9

{¶27} Miller argues it was an abuse of the trial court's discretion not to grant a continuance in order to allow Miller to be transported from Lorain Correction Facility and to allow him to file a motion for legal custody to be granted to Javon. We disagree.

{¶28} As stated by the Supreme Court of Ohio, a juvenile court is under no duty to "find by clear and convincing evidence that no suitable relative was available for placement" before terminating parental rights. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶64. "'Relatives [who seek] the placement of a child are not afforded the same presumptive rights that a natural parent receives as a matter of law. * * * Rather, the juvenile court is vested with discretion to determine what placement option is in the child's best interest. * * *.'" *In re P.J.*, *supra*, at ¶44, quoting *In re Dyal*, 4th Dist. Hocking No. 01CA11, 2001 WL 925379, *4 (Aug. 9, 2001).

{¶29} R.C. 2151.414(E)(12) states, in pertinent part:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> * * *
>
> (12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

10

{¶30} In the instant case, the record supports the finding of the trial court that it was in the best interest of the child to grant permanent custody to PCDJFS. The evidence supports the findings by the trial court under R.C. 2151.414(B)(1)(a) and (b), that both parents should not be placed with—and had abandoned—S.I.M., and the child was not able to be placed with Miller within a reasonable amount of time under R.C. 2151.414(E)(12) due to his incarceration. Granting a continuance to provide Miller with a transport to attend the hearing would not have affected this determination.

{¶31} Regarding Javon, Miller did not offer her name as a possible placement option until July 12, 2019, several weeks after the permanent custody motion had been filed and over two years after the child was placed with the Yoders. Although PCDJFS investigated the possibility of placement with Javon, she was not a party in the matter and had never filed a motion for custody. Based on the facts of this case, the existence of Javon presented the trial court with a factor to consider in determining the best interest of S.I.M. *See*, *e.g.*, *In re Qu.W.*, 11th Dist. Ashtabula No. 2015-A-0016, 2015-Ohio-2202, ¶54, quoting *In re D.B.*, 5th Dist. Stark No. 2007-CA-00362, 2008-Ohio-2283, ¶66. ("'The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. Accordingly, a court is not required to favor a relative if, *after considering all the factors*, it is in the child's best interest for the agency to be granted permanent custody.'") (emphasis added). PCDJFS concluded that placement with Javon was not appropriate after considering her and conducting a home study. The Guardian ad Litem agreed. The trial court's finding that it was not in the best interest of S.I.M. to be placed with Javon was supported by the record. Since Javon made no effort to intervene or participate in the process, and the agency nevertheless

11

investigated her as a possible placement, the trial court did not abuse its discretion in overruling the motion for a continuance.

{¶32} Miller's second assignment of error has no merit.

{¶33} Miller's third assignment of error states:

THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO APPELLEE WHEN APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶34} "Where the state institutes proceedings to force the permanent, involuntary termination of a parent's right in respect to their children, the parent is guaranteed effective assistance of counsel by the due process clauses of the United States and Ohio Constitutions." *In re Ridenour*, 11th Dist. Lake Nos. 2004-L-168, et seq., 2005-Ohio-349, ¶9 (citations omitted). "The two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) is to be used when addressing ineffective assistance of counsel claims in cases involving the termination of parental rights. Accordingly, appellant must show that counsel's performance was deficient and, in addition, that the deficient performance was prejudicial." *In re D.H.*, 11th Dist. Geauga No. 2009-G-2882, 2009-Ohio-2798, ¶76, citing *Ridenour*, *supra*, at ¶9-10. Prejudice exists when there is a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. *Roque*, *supra*, at ¶11, citing *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland, supra*, at 686.

{¶35} Miller asserts his trial counsel was ineffective in ensuring his meaningful participation in the hearing. We disagree. As discussed above, Miller was not absolutely

entitled to be transported from Lorain Correctional Facility for the hearing. His counsel participated in all court hearings regarding the child, cross-examined the witness presented by PCDJFS during the permanent custody hearing and proffered motions and objections on Miller's behalf both during and before the permanent custody hearing. Nothing in the record demonstrates Miller's counsel's performance was so lacking as to create an unjust result at the permanent custody hearing, or that the result of the proceeding would have been different had Miller participated in the hearing. Miller's incarceration in excess of 18 months after the filing of the motion for permanent custody or the dispositional hearing renders placement with him within a reasonable amount of time impossible under R.C. 2151.414(E)(12), and he cannot assert an argument for placement on behalf of Javon, who did not file a motion or otherwise intervene as a party in the matter.

{¶36} Miller's third assignment of error has no merit.

{¶37} The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.

13