OPINION
{¶ 1} Appellant, Bobbie Jo Ridenour ("Bobbie Jo"), appeals the September 9, 2004 judgment entry of the Lake County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her minor children, Jessica, Billy, and Jordan Ridenour, to the Lake County Department of Job and Family Services ("Lake Family Services").[1] For the following reasons, we affirm the decision of the juvenile court.
 {¶ 2} Lake Family Services' involvement with the Ridenour children began in September 1998 and culminated in Lake Family Services moving for permanent custody of the children in March 2003. On August 22, 2003, the juvenile court granted Lake Family Services' motion. The juvenile court made the following findings in support of its decision: "[R]easonable efforts have been made to avoid removal of the children, but to remain in the home would be contrary to the children's best interest * * *. The testimony and evidence in this matter reflect that [the] mother has not been able, at any time, to properly parent these children for many reasons * * *. She has, at various times throughout, been dependent upon drugs which severely limited her ability to properly provide for the children. She has made attempts to discontinue this use and was clean from November, 2002 to June, 2003, but unfortunately, again resorted to marijuana, knowing full well that such use would negatively affect her case for return of her children. Mother * * * has not always exercised good judgment in her relationship with men, and as a result has unintentionally allowed the children to either be placed in a position of peril, or to remain there. It is further clear that mother suffers from some very concerning personality disorders, as well as financial hardships. All of these have resulted in substantial emotional instability and depression. * * * [B]ecause of the tumult, uncertainty and chaos of these previous [living] environments, the children suffer from some very serious disabilities which now require extensive counseling and treatment. It is agreed by all experts that Jessica and Billy should not reside together because of the sexual victimization that previously occurred. Mother did not, and has not, recognized the need for such treatment, either for the children or herself. She has continuously missed either counseling or medical appointments and has irresponsibly failed to provide the necessary medication, all of which were detrimental to the children. * * * [T]he Court can only comment that mother's attempts at visiting and/or maintaining relationships with the children [while in Lake Family Services' custody] have been futile, at best."
 {¶ 3} This court reviewed the trial court's decision in Inre Ridenour, 11th Dist. Nos. 2003-L-146, 2003-L-147, and 2003-L-148, 2004-Ohio-1958. Therein, we approved the juvenile court's findings that Bobbie Jo consistently failed to effectively parent and maintain a relationship with her children and to provide a suitable home environment. Id. at ¶¶ 37-41. We reversed, however, based on the juvenile court's failure to properly consider the children's wishes regarding their placement, as required by R.C. 2151.414(D)(2), and for failing to consider whether the children were entitled to the appointment of counsel. Id. at ¶¶ 55-57.
 {¶ 4} On remand from this court, the juvenile court appointed Bryan Hegyes ("Hegyes"), the new guardian ad litem for the Ridenour children. Hegyes met with all three of the Ridenour children individually. In the course of Hegyes' investigation, Jessica and Billy expressed their desire to be reunited with their mother. Jordan, then age three and suffering from developmental delays, did not communicate verbally and, therefore, was unable to express his wishes regarding placement. In the report filed with the court, Hegyes concluded that Jessica's and Billy's desire to be with their mother was not in their best interest and recommended that permanent custody of all three children be given to Lake Family Services.
 {¶ 5} Since Jessica's and Billy's wishes conflicted with Hegyes' recommendation regarding their placement, the juvenile court appointed James Falvey ("Falvey") to serve as counsel for the Ridenour children.
 {¶ 6} The juvenile court scheduled a hearing on the children's wishes for August 30, 2004. By prior agreement of the parties, the court conducted an in camera interview with Jessica and Billy the morning of the hearing date. The children's guardian ad litem and counsel were present for this interview. The Lake County Prosecutor and Bobbie Jo, through her attorney, filed written waivers of their right to be present at this interview. In the court's words, "both children very distinctly and clearly advised the Court that they wished to remain with their mother * * * that they were confident * * * the situation had changed and that their mother would be suitable for them; that she would protect them if there were * * * any violence committed against them * * * that they both cared about each other and their other siblings, and wished to return and have a family."
 {¶ 7} The court, then, proceeded to conduct the hearing, disclosing what the children had said in camera to the parties and hearing argument from the parties. Bobbie Jo was not present at the hearing.
 {¶ 8} On September 9, 2004, the juvenile court issued its judgment entry terminating Bobbie Jo's parental rights in respect to Jessica, Billy, and Jordan. On appeal, Bobbie Jo raises the following assignment of error: "Appellant received ineffective assistance of counsel in violation of her due process rights under the state and federal constitutions and was deprived of a full and fair hearing of her case; specifically, appellant's counsel did not call any witnesses or present new evidence of appellant's compliance with the case plan since the initial permanent custody disposition, or her ability to care for her children as a result of her efforts to continue to seek treatment in compliance with the case plan. Trial counsel failed to cross examine the guardian ad litem regarding the contents of his report. Because appellant's right to effective assistance of counsel was denied throughout the proceedings on remand for determination of the children's wishes, the trial court's order granting custody of the children to Lake County Department of Job and Family Services must be reversed and remanded."
 {¶ 9} Where the state institutes proceedings to force the permanent, involuntary termination of a parent's right in respect to their children, the parent is guaranteed effective assistance of counsel by the due process clauses of the United States and Ohio Constitutions. State ex rel. Heller v. Miller (1980),61 Ohio St.2d 6, paragraph two of the syllabus; In re Brewster
(Mar. 25, 1994), 11th Dist. No. 91-P-2365,1994 Ohio App. LEXIS 1317, at *3, citing Jones v. Lucas Cty. Children Services Bd.
(1988), 46 Ohio App.3d 85, 86. When evaluating claims of ineffective assistance of counsel in proceedings to terminate parental rights, courts apply the two-part test of Strickland v.Washington (1984), 466 U.S. 668, applicable in criminal proceedings. In re Andy-Jones, 10th App. Nos. 03AP-1167 and 03AP-1231, 2004-Ohio-3312, at ¶ 43 (citations omitted); In reHeston (1998), 129 Ohio App.3d 825, 827 (citations omitted);Brewster, 1994 Ohio App. LEXIS 1317, at *3 (citations omitted);In re Richardson (Aug. 19, 1987), 4th App. No. CA 1674,1987 Ohio App. LEXIS 8422, at *25 (citations omitted).
 {¶ 10} To demonstrate ineffective assistance of counsel, Bobbie Jo "must show that counsel's performance was deficient and that * * * the deficient performance was so serious as to deprive [her] * * * of * * * a trial whose result is reliable." In reColbert (Nov. 9, 2000), 11th App. No. 2000-A-0028,2000 Ohio App. LEXIS 5249, at *7, citing State v. Post (1987),32 Ohio St.3d 380, 388; cf. Brewster, 1994 Ohio App. LEXIS 1317, at *3 (the Strickland test "requires a showing that counsel's performance was so deficient that the constitutional guarantee was not satisfied, and that the deficient performance prejudiced the defense") (citation omitted).
 {¶ 11} Bobbie Jo argues that trial counsel was deficient for failing to fully explain the waiver she signed prior to the August 30, 2004 hearing. According to Bobbie Jo, trial counsel failed to distinguish between the in camera interview with Jessica and Billy and the actual hearing.
 {¶ 12} Bobbie Jo's contentions regarding her counsel's performance are unsupported by the record. The waiver signed by Bobbie Jo clearly states she is waiving "her presence * * * at the In Camera Portion of the Wishes and Concerns Hearing * * * to avoid an overly emotional re-union prior to or during the Hearing." At the hearing, Bobbie Jo's counsel expressed his perplexity at Bobbie Jo's failure to appear: "It was my understanding that we were going to have — she was going to be present today at the court. I don't know where she is. I don't have a phone number for reaching her. When we spoke on the 26th, which is the date I had her sign and execute the waiver, all indications were that she was going to be here."
 {¶ 13} Bobbie Jo makes no affirmative representation as to why she was not present at the actual hearing. Nor does she dispute counsel's testimony that she indicated that she would be present at the hearing. The only evidence of trial counsel's deficient performance is the deductive argument that, given Bobbie Jo's strong desire to parent her children, she would not have voluntarily failed to appear at the hearing. Therefore, it is argued, counsel must have failed to explain the significance of the waiver. This argument is insufficient to overcome the strong presumption that trial counsel acted competently in his representation. Post, 32 Ohio St.3d at 388 (citation omitted).
 {¶ 14} Bobbie Jo's second argument is that counsel was ineffective for failing to use the opportunity, on remand, to introduce additional evidence of Bobbie Jo's remediation of the conditions that caused Lake Family Services to move for permanent custody. In its September 9, 2004 judgment entry, the juvenile court noted that Bobbie Jo did not "offer any evidence to suggest that the situation had improved, or that she had discontinued her drug use and entered into any counsel[l]ing or treatment," but that the court was "prepared to hear evidence and had set aside time for such."
 {¶ 15} This court remanded this case in our prior decision with instructions "to hold a hearing on the sole issue of thechildren's wishes," and, then, to render a decision "based on the evidence already in the record and on the evidence admitted after remand," i.e. at the hearing on the sole issue of the children's wishes. 2004-Ohio-1958, at ¶ 57 (emphasis added). It was not this court's intention that all the issues of this case be relitigated. Therefore, trial counsel's performance was not deficient for failing to introduce additional evidence on issues not relating to the children's wishes.
 {¶ 16} Bobbie Jo's assignment of error is without merit.
 {¶ 17} In the present case, Jessica's and Billy's wishes to remain with Bobbie Jo were forcefully and effectively put before the trial court through the advocacy of Bobbie Jo's trial counsel,[2] the advocacy of appointed counsel for Jessica and Billy, the guardian ad litem's report, and the juvenile court's in camera interview with Jessica and Billy.
 {¶ 18} The juvenile court, while acknowledging the sincerity of the children's wishes, found that those wishes did not outweigh the contrary evidence that returning them to Bobbie Jo's custody would not be in their best interest: "This court, while it would very much like to grant these wishes and reunite the family to a stable, loving and caring home life, must actually look at the facts that have been presented and as they have occurred during the six years that this matter has been pending. The Court cannot put out of its mind the fact that [the] mother has never made any serious effort to participate in the case plans or to follow any orders which this Court entered in adopting the case plans. It also cannot fail to consider her inability to discontinue her dependency upon drugs. * * * The Court must also recall the futility of her attempts to visit the children, and again has not been presented with one iota of evidence that she has exercised any available visitation with the children. * * * It is therefore this Court's opinion that the wishes of the children, while certainly a factor to be considered, cannot outweigh all the evidence contrary to their wishes, and cannot persuade this Court that returning custody to their mother is in their best interest. While the Court must find that these children are mature enough to form wishes, they are far too immature to weigh their wishes against their best interest and to make a decision contrary to what they would like the facts to be. * * * This decision is made in consideration of all the factors enumerated in the previous decision filed August 22, 2003, as well as the facts set forth in the same decision."
 {¶ 19} Thus, the juvenile court has complied with our instructions on remand of issuing a new judgment, taking into consideration the children's wishes as required by R.C. 2151.414(D)(2).
 {¶ 20} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Juvenile Division, committing Jessica, Billy and Jordan Ridenour to the permanent custody of Lake Family Services, is affirmed.
O'Neill, J., Rice, J., concur.
[1] The September 9, 2004 judgment entry also terminated the parental rights of Cory Long with respect to Jessica, the parental rights of Ramon Quinones with respect to Billy, and the parental rights of David ll with respect to Jordan.
[2] Bobbie Jo's trial counsel stated that he had consulted with Bobbie Jo as to what "their role" would be at the hearing and that they "anticipated that the children would * * * want to be reunited with their mother." At the hearing, counsel argued "that the children are not doing this out of any blind sense of loyalty, but * * * that they have thought through what the potential problems of reunification are, and despite those potential problems, they seem prepared and ready to deal with their potential problems, and * * * that changes the case entirely."