{¶ 61} I respectfully dissent from the opinion of the majority as to the first assignment of error. The analysis of the majority only deals with the failure to transport the father from his prison cell in North Carolina, not the failure to accommodate him by allowing participation via a telephone. It must be noted that not only does he possess a right to attend the hearing, which stems from his right under the Confrontation Clauses of both the Ohio and United States Constitutions, but that the denial of the accommodation of allowing him to be present via a telephone was simply because there was not a phone in the hearing room. This accommodation request was negligible in *Page 15 
our day and age of internet, cellular and telephonic communication. The trial court made no effort to accommodate the father's constitutional and statutory rights. He could not assist his counsel during the trial without hearing the testimony.
 {¶ 62} Juv. R. 23 states that: "[continuances shall be granted only when imperative to secure fair treatment for the parties." The grant or denial of a continuance is a matter that is within the sound discretion of the trial judge. State v. Unger (1981), 67 Ohio St.2d 65, syllabus. In deciding whether to grant or deny a motion for continuance, the trial court must balance "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." Id. at 67. I humbly suggest that the trial court's denial is clearly an abuse of discretion in this instance. The termination of parental rights is "* * * the family law equivalent of the death penalty * * *."Phillips, supra, at ¶ 22, citing Hoffman, supra, at ¶ 14. See, also,In re Murray (1990), 52 Ohio St.3d 155, 157 (parents have a "`fundamental liberty interest'" in the care, custody, and management of their children, and an "`essential'" and "`basic civil right'" to raise them).
 {¶ 63} Accordingly, when the state initiates a permanent custody proceeding, parents must be provided with fundamentally fair procedures in accordance with the due process provisions of theFourteenth Amendment to the United States Constitution, and Section 16, Article I
of the Ohio Constitution. Sheffey, supra, at ¶ 21. This includes effective assistance of counsel. State ex rel. Heller v. Miller (1980),61 Ohio St.2d 6, paragraph two of the syllabus; In re Roque, 11th Dist. No. 2005-T-0138, 2006-Ohio-7007, ¶ 7; In re Ridenour, 11th Dist. Nos. 2004-L-168, 2004-L-169, and 2004-L-170, 2005-Ohio-349, at ¶ 9; In reBrewster (Mar. 25, 1994), 11th Dist. No. 91-P-2365, 1994 *Page 16 
Ohio App. LEXIS 1317, at 3, citing Jones v. Lucas Cty. Children ServicesBd. (1988), 46 Ohio App.3d 85, 86.
 {¶ 64} In United States v. Cronic (1984), 466 U.S. 648, the U.S. Supreme Court held that a per se violation of the right to counsel exists "* * * when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." Id. at 659, fn. 25. The Court further observed there may be "* * * some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Id. at 659-660.
 {¶ 65} Both parents in this action had a constitutional and statutory right to be present, or at a minimum, participate at the hearing. Cf.Sheffey at ¶ 12, fn. 1; In re Thompson (Apr. 26, 2001), 10th Dist. Nos. 00AP-1358 and 00AP-1359, 2001 Ohio App. LEXIS 1890, at 19. In lieu of appearance, a trial court may make other arrangements so a parent can witness and participate in the hearing, guaranteeing that parent's rights to due process and confrontation of witnesses. See, e.g.,Sheffey at ¶ 12, fn. 1; see, also, Jordan v. Ivanchak (Dec. 15, 1989), 11th Dist. No. 88-T-4102, 1989 Ohio App. LEXIS 4713, at 6-9. The trial court herein made no such arrangements, denying the father's right to participate in a trial that was tantamount to the family law equivalent of the death penalty.
 {¶ 66} The majority correctly notes that an incarcerated individual does not have an absolute due process right to attend a hearing at which his visitation or custody rights will be determined. Cf. In reJergens (June 26, 1998), 2d Dist. No. 16848, 1998 *Page 17 
Ohio App. LEXIS 2830, at 6-7; In re Smith (Mar. 1, 1995), 9th Dist. No. 16778, 1995 Ohio App. LEXIS 815, at 4-5; see, also, Mancino v.Lakewood (1987), 36 Ohio App.3d 219, 221, citing Wolff v. McDonnell
(1974), 418 U.S. 539, 576. Incarcerated parents do have the right to be represented by counsel and present evidence at such hearings. In reCarpenter (Jan. 31, 2002), 4th Dist. No. 01CA26, 2002 Ohio App. LEXIS 495, at 12. An incarcerated parent's right to due process is not violated when the parent is represented by counsel at the hearing, a full record of the proceedings is made, and any testimony that the parent may wish to present could be offered by way of deposition. See, e.g., In re Frasher (Aug. 20, 1997), 9th Dist. No. 18100, 1997 Ohio App. LEXIS 3746, at 4-5; Smith, supra, at 4-6; In re Harding (Jan. 25, 1995) 9th Dist. No. 16552, 1995 Ohio App. LEXIS 263, at 8-9; In re CM., 9th Dist. Nos. 23606, 23608, and 23629, 2007-Ohio-3999, at ¶ 24.
 {¶ 67} In the case at bar, no opportunity was provided for father to present evidence by deposition, and no other reasonable type of accommodation was attempted. His motion for continuance, timely filed, was summarily denied for want of a phone in the hearing room.
 {¶ 68} When the state initiates a permanent custody proceeding, parents must be afforded fundamentally fair procedures in accordance with the Fourteenth Amendment Due Process Clause and Section 16, Article I, of the Ohio Constitution. In re Sears (Jan. 31, 2002), 10th Dist. No. 01 AP-715, 2002 Ohio App. LEXIS 319, at 11, citing In re Elliott (June 25, 1993), 4th Dist. No. 92 CA 34, 1993 Ohio App. LEXIS 3267. Natural parents have a constitutionally protected right to be present at permanent custody hearings and these rights extend to an incarcerated parent, even if these rights may not *Page 18 
be absolute. Id. citing, In re Vandale (June 30, 1993), 4th Dist. No. 92 CA 31, 1993 Ohio App. LEXIS 3465; see, also, Jergens, supra;Smith, supra; Mancino, supra, at 221.
 {¶ 69} I do not believe the majority has fully applied the balancing test set forth by the U.S. Supreme Court in Mathews, supra, at 335. The Supreme Court held that three factors must be considered: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function and fiscal and administrative burdens that the additional or substitute procedural requirements would entail. Id.
 {¶ 70} Hence, in order to determine whether the trial court erred in denying father's request to continue the hearing until a telephone was available, is part of the applicable Mathews analysis in this matter. The analysis used by the majority (that there was no prejudice simply because he was incarcerated, and allegedly was not to be released for over four years), is erroneous and does not constitute justification for denying his constitutional right to confront witnesses and be present, assist his counsel during trial, and to testify or not on his own behalf.
 {¶ 71} The majority correctly states the first factor of theMathews analysis, in determining the private interest affected by the denial of the father's right to attend the hearing. The majority properly sets forth appellant's fundamental liberty interest in the care, custody, and management of their right to parent and the existence of the protections afforded therein. Parental rights do not dissolve just because he was *Page 19 
incarcerated, was not a model parent, or lost temporary custody. SeeSantosky, supra, at 753.
 {¶ 72} However, the majority fails to fully explore the second factor of the Mathews balancing test: evaluating the risk of erroneous deprivation of the father's private interest, through being deprived of a chance to participate in the hearing concerning his parental rights. He was precluded from testifying on his own behalf; he was not offered the chance to provide a deposition; he was not able to assist his counsel in advocating for relative placement.
 {¶ 73} Further, counsel's lack of access to her client seriously compromised her ability to present his side of the case. It appears from the record that she was given access to him only a few days before trial and during a break in proceedings. The fact that she could call him from court in North Carolina demonstrates his availability to participate via telephone. Although represented by counsel at the hearing, the father could not assist counsel in his defense or in cross-examination, as he was unable to witness the testimony and confront his accuser. He could only speak to his attorney upon a break. Counsel for defendant called no witnesses and filed no discovery until after the hearing. She affirmed her readiness to go to trial on the record. However, it is difficult to imagine counsel's level of preparedness matched the needs for trying a permanent custody case, when she had minimal access to her client, presented no defense, and called no witnesses.
 {¶ 74} In undertaking it's analysis of the second Mathews factor, the majority aptly notes the father's incarceration precluded placement with him at the time. However, he timely requested a continuance, and asked for transportation or telephone *Page 20 
access by filing a timely motion before the court, and raised the issue again in his objections to the magistrate's report. He clearly did not waive his right to be present and confront his accusers. He preserved his objection for appeal. The requested accommodation was not unreasonable given the seriousness and permanency of the proceedings. The court's arbitrary denial flies in the face of existing precedent.
 {¶ 75} The third factor set forth in Mathews, the state's interest in parental termination proceedings, was not argued but must be analyzed for consistency. In examining this third factor, the Santosky court noted that two state interests are at stake in permanent custody proceedings: (1) a parens patriae interest in preserving and promoting the welfare of the child, and (2) a fiscal and administrative interest in reducing the cost and burden of such proceedings. Santosky, supra, at 766. In a permanent custody proceeding, the state's parens patriae
interest is served by procedures that "promote an accurate determination of whether the natural parents can and will provide a normal home." Id. at 767. There was no prejudice or expense to the state in providing a telephone so the father could participate in the hearing and protect his rights. In fact, by insuring appellant's due process rights and a more reliable, less one sided process, the accommodation requested was de minimus.
 {¶ 76} Therefore, based on the foregoing I would reverse and remand this matter to the trial court for a new trial.
 {¶ 77} I respectfully dissent. *Page 1