[Cite as *In re P.O.*, 2015-Ohio-4774.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

GEAUGA COUNTY, OHIO


IN THE MATTER OF:  P.O., K.O., G.P.,    :    **O P I N I O N**
AND A.P., DEPENDENT CHILDREN.
                                        :
                                             CASE NO.  2015-G-0028
                                        :



Appeal from the Geauga County Court of Common Pleas, Juvenile Division.  Case No. 13 JF 000332.

Judgment: Affirmed in part, reversed in part, and remanded.


*Anita B. Staley,* Barthol & Staley, L.P.A., 7327 Center Street, Mentor, OH  44060 (For Appellant – Brittany Ponn).

*James R. Flaiz,* Geauga County Prosecutor, and *Abbey L. King,* Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH  44024 (For Appellee – Geauga County Jobs and Family Services).

*Jeffrey T. Orndorff,* Jeffrey T. Orndorff Co., L.P.A., 117 South Street, #110, P.O. Box 1137, Chardon, OH  44024-5137 (Guardian ad litem for P.O.).

*Sarah L. Heffter,* 401 South Street, #2-B, Chardon, OH  44024 (Guardian ad litem for K.O.).


CYNTHIA WESTCOTT RICE, J.

{¶1}    Appellant, Brittany Ponn, mother of minor children P.O. (dob 3/31/09) and K.O. (5/14/10), appeals from the judgment of the Geauga County Court of Common Pleas, Juvenile Division, terminating her parental rights.  We affirm in part, reverse in part, and remand the matter for further proceedings.

{¶2} On August 29, 2013, the Geauga County Department of Job and Family Services ("GCJFS") was granted emergency temporary custody of P.O. and K.O. due to concerns of parental drug use and unsanitary living conditions. The children were subsequently adjudicated dependent and remained in the temporary custody of GCJFS. A dispositional hearing was held on November 14, 2013, during which the trial court adopted GCJFS' case plan. The children remained in GCJFS' temporary custody and, on June 11, 2015, a permanent custody hearing was held. Appellant did not personally appear at the hearing, but was represented by counsel. At the time of the hearing, appellant had not appeared in the proceedings since November 2014 and had no contact with the children since May 2014.

{¶3} Prior to opening statements, appellant's counsel objected to the hearing going forward. Counsel asserted appellant was not properly served with notice of the permanent custody hearing and, as a result, the trial court lacked personal jurisdiction over appellant. After reviewing the relevant law, the trial court denied the motion. From the bench, the court stated:

{¶4} The court is satisfied that, first of all, Miss Ponn, we have jurisdiction over Miss Ponn from the initial filing in this case, and the fact that Miss Ponn appeared in this Court on 10/7/13, requesting an attorney who was appointed for her at the expense of the County. 11/14/13, she appeared before this Court. 2/24/14 she appeared before this Court. 5/15/14 she appeared before this Court. 6/2/14 she appeared before this Court. On 8/13/14 she appeared before this Court.

{¶5} She was, in this Court's opinion, properly served, both through counsel, and in accordance with Rule and Statute, and that the Court looks at the case law that has been recited In RE: ALW case, can be readily distinguished based on the facts I have just mentioned.

2

{¶6} Interestingly enough, the Ninth District has actually distinguished its In RE: SS Opinion in a case called In RE: DG, 2012 opinion, two years later, where they pointed out that the Court's vacation of the termination of parental rights was not based solely on a lack of compliance with 2159.29 and the manner that service was attempted on a mother.

{¶7} However, rather, this Court vacated the permanent custody judgment based upon the unique facts of that case, specifically, that in this case, it did not appear that she had counsel as well as other issues that would render it distinguishable from our case.

{¶8} Last but not least, the Court does not believe that a party, and there's no question that Miss Ponn has been a party in this case, can and have counsel apparent, can avoid the process simply by avoiding the Court.

{¶9} And there's no question that in this case, Miss Ponn has failed to appear. She has failed to cooperate with Jobs and Family Services, failed to communicate with the Guardian ad Litem, in violation of standing orders of this Court, and by the motion filed by counsel for Miss Ponn, has even failed to communicate with her own attorneys.

{¶10} To the extent that Miss Ponn does not have notice of these proceedings, the Court did not find that conclusion. But it would be because Miss Ponn has actively and willfully attempted to avoid the Court's proceedings in these matters for several months. (Sic throughout)

{¶11} After opening statements, trial commenced. GCJFS first called Patrick Minno to testify. Mr. Minno is a supervisor at Omega Laboratories and testified that appellant tested positive for various drugs on four separate occasions during the pendency of the case.

{¶12} Dr. Alan Shein, the Medical Director of Addiction Medicine Services with Summa Health System In-Patient Hospitalization at St. Thomas and Akron City Hospitals, testified that appellant was admitted to a drug detoxification unit at Summa Health System, St. Thomas Hospital in Akron, Ohio on September 22, 2013. Appellant

was diagnosed with opiate dependency. Dr. Shein recommended appellant seek follow-up treatment with a separate facility, Turning Point, but was unaware whether she did so.

{¶13} Jennifer Marut, a Dual-Diagnosis Clinician with Ravenwood Mental Health Clinic, testified appellant had an appointment with her on December 10, 2013 for a drug and alcohol evaluation as well as a mental health evaluation, pursuant to appellant's case plan. The appointment, however, was cancelled for unknown reasons. Ms. Marut tried contacting appellant at several different phone numbers to reschedule and also drafted a letter for the same purpose. Appellant did not return any of Ms. Marut's attempted communications.

{¶14} Jodi Miller, the GCJFS social worker assigned to appellant's case, testified that after the children were placed into emergency temporary custody, appellant took initial steps and voluntarily admitted herself to detoxification treatment at Summa. After her detox treatment, Summa scheduled an appointment with Turning Point, a residential drug treatment facility. Appellant did not attend the appointment and advised Ms. Miller she felt residential treatment was unnecessary. Ms. Miller subsequently referred appellant to Ravenwood for drug and alcohol as well as mental health assessments. According to Ms. Miller, appellant failed to follow up with Ravenwood and the facility closed her file in February 2014. Ms. Miller testified she last had contact with appellant in July 2014 and she was unable to locate appellant after that date.

{¶15} With respect to appellant's visitation, appellant consistently visited the children between October 2013 and late December 2013; during this timeframe, however, appellant was late for many visits. Although visitation was available and

4

GCJFS offered transportation, appellant failed to visit from December 24, 2013 through March 2014. Appellant's last visit occurred on May 23, 2014 and, since that date, she has neither contacted GCJFS about the children's status, nor requested the opportunity to contact or visit the children.

{¶16} Ms. Miller testified appellant continued to illegally use drugs throughout her involvement in the case; appellant made it difficult and ultimately impossible for Ms. Miller or GCJFS to contact her. And, Ms. Miller testified, even when she was in contact, appellant routinely failed to comply with her case plans, despite GCJFS' efforts to assist.

{¶17} Ms. Miller testified appellant was arrested in June 2014 for her alleged involvement in methamphetamine manufacturing. Further, appellant failed to appear for a November 2014 hearing in the criminal matter and, as a result, a warrant for her arrest was issued. Ms. Miller noted that appellant's visitation with the children was suspended after her arrest; she, however, never moved the court to reinstate visitation. The criminal matter was still pending at the time of the permanent custody hearing. There was no testimony, however, regarding the stage of the pending prosecution.

{¶18} Ms. Miller testified, at the time GCJFS moved for emergency temporary custody, the children were unclean; they did not use utensils to eat; they had speech delays; and were rambunctious as well as, in some cases, hostile, with others. Since their placement in foster care, they have improved significantly and are doing well in school and thriving with the foster family. Ms. Miller testified the children have stability and structure currently and that appellant is unable to provide these necessary living conditions.

{¶19} Finally, Sandy Pogan, the Guardian ad Litem ("GAL"), testified she had little contact with appellant. She primarily testified to her contact with the children; in her view, the children were bonded with their foster parents and had made progress since their placement. Under the circumstances of the case, Ms. Pogan testified the children's best interests would be served by granting GCJFS permanent custody.

{¶20} After considering the testimony and other evidence, the trial court granted GCJFS permanent custody. This appeal follows. Appellant assigns three errors, which we shall address out of order. For her second assignment of error, appellant asserts:

{¶21} "The court erred when it overruled appellant's objection regarding mother having not been properly served with notice of the permanent custody proceedings to the detriment of the appellant."

{¶22} Under this assignment of error, appellant initially contends the trial court erred in concluding it had personal jurisdiction over her. We do not agree.

{¶23} Personal jurisdiction may be obtained by service of process, voluntary appearance, or waiver. *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984). An objection to personal jurisdiction is waived if a party fails to challenge such jurisdiction at her first appearance in the case. *In re A.L.W.*, 11th Dist. Portage Nos. 2011-P-0050, 2011-P-0051, and 2011-P-0052, 2012-Ohio-1458, ¶37. In this matter, appellant initially appeared in the case on October 7, 2013, seeking appointment of counsel, which the trial court granted. And she does not dispute the trial court's finding that, subsequent to that appearance, she appeared before the court five additional times for hearings. At no point did appellant object to the court's jurisdiction over her person. By failing to challenge the court's jurisdiction over her, she forfeited any such challenge on appeal.

6

And, given appellant's voluntary appearances, we discern no plain error in the court's conclusion that it properly exercised personal jurisdiction over appellant.

{¶24} Next, appellant contends the trial court erred in concluding she received sufficient notice of the permanent custody hearing.

{¶25} R.C. 2151.29, which governs service in juvenile proceedings, provides, in relevant part:

> {¶26} Service of summons, notices, and subpoenas, prescribed by section 2151.28 of the Revised Code, shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at the person's usual place of residence. If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail. * * * Whenever it appears by affidavit that after reasonable effort the person to be served with summons cannot be found or the person's post-office address ascertained, whether the person is within or without a state, the clerk shall publish such summons once in a newspaper of general circulation throughout the county. The summons shall state the substance and the time and place of the hearing, which shall be held at least one week later than the date of the publication. A copy of the summons and the complaint, indictment, or information shall be sent by registered or certified mail to the last known address of the person summoned unless it is shown by affidavit that a reasonable effort has been made, without success, to obtain such address.

{¶27} Mother relies primarily on the Ninth Appellate District's decision in *In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-6374, in support of her position that the trial court erred in concluding service was sufficient. In *S.S.*, the appellate court vacated a trial court's permanent custody judgment because there was nothing in the record indicating the mother had been served with the permanent custody motion under a method that was proper under R.C. 2151.29. While the service in *S.S.* did not comport with the statute, the court's conclusion was not solely premised on a lack of compliance with R.C. 2151.29. Rather, the court vacated the permanent custody judgment based

7

on the unique facts of the case. Not only was there nothing in the record to indicate that the appellant-mother had received proper notice of the permanent custody hearing, the record indicated she did not receive *any* notice. Moreover, she was not represented by counsel when the hearing took place. Because the record indicated the mother had no notice of the permanent custody hearing and was unrepresented, the court concluded that the trial court was without authority to terminate her parental rights.

{¶28} Here, the record indicates that appellant had not appeared in the proceedings, in any capacity, since November 5, 2014, when she appeared telephonically for a review hearing; and, despite regular efforts via telephone and letter, appellant's attorney had been unable to contact her since November 13, 2014. Appellant's counsel was served, but was unable to contact appellant.

{¶29} In attempting to complete service on appellant's person, the court sent notice to the only address appellant provided. The initial summons was sent by certified mail and was returned unclaimed; service was subsequently sent via regular mail, which was not returned. Although service by regular mail is not specifically contemplated by R.C. 2151.29, under ordinary circumstances, when regular mail is not returned, service is presumed perfected pursuant to Civ.R.4.6(D). Although not dispositive, this provides some indication that appellant had notice of the hearing.

{¶30} Moreover, appellant was represented by counsel, who received notice and appeared on appellant's behalf at the hearing. And counsel vigorously defended appellant's rights, notwithstanding appellant's ostensible disinterest in reunification. Under the circumstances of this case, we hold the measures taken by the trial court to perfect service were sufficient in this matter.

8

{¶31} Appellant's second assignment of error lacks merit.

{¶32} Appellant's first assignment of error provides:

{¶33} "The trial court erred in granting the motion for permanent custody as such decision was against the manifest weight of the evidence and resulted in a manifest miscarriage of justice."

{¶34} A parent has a basic civil right to raise his or her child. *See, e.g., In re J.H.,* 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶87. This right, however, is subordinate to the child's best interest. *Miller v. Miller*, 37 Ohio St.3d 71, 75 (1988).

{¶35} R.C. 2151.414 provides the two-part analysis a court must follow in permanent custody proceedings. Pursuant to R.C. 2141.414(B)(1), a trial court may grant permanent custody if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply:

{¶36} (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶37} (b) The child is abandoned.

{¶38} (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶39} (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies

9

for twelve or more months of a consecutive twenty-two-month period or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2141.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶40} After concluding one of the four factors in R.C. 2141.414(B)(1)(a) – (d) applies, the trial court must decide, by clear and convincing evidence, whether the award of permanent custody to an agency is in the child's best interest based upon a non-exclusive list of relevant factors which are set forth in R.C. 2151.414(D). They provide:

{¶41} (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶42} (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶43} (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

{¶44} (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶45} (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶46} "Clear and convincing evidence  is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Aiken*, 11th Dist. Lake No. 2005-L-094, 2005-Ohio-6146, ¶28.   In cases involving the termination of parental rights, an appellate court applies the manifest weight of the evidence standard of review. *In re B.R.C.*, 11th Dist. Portage Nos. 2013-P-0059 and 2013-P-0060, 2014-Ohio-69, ¶ 41. Weight of the evidence, in both civil and criminal cases, concerns "'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [finder of fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.'" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶12, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶47} In support of its decision, the trial court made the following preliminary findings relating to R.C. 2151.414:

{¶48} This court finds that clear and convincing evidence that Mother has engaged in significant and ongoing abuse of drugs.   Further, Mother has chosen not to be involved in this case or make any effort to be involved in the case.  Mother has made no effort to fulfill the requirements of the case plan or to take the actions necessary to pursue reunification with her children.  Because of the actions of Mother, she cannot serve as a custodial parent of the children.

{¶49} In accordance with R.C. 2151.414, this Court finds that clear and convincing evidence exists which prevents the children in question from being placed with either parent.  Neither parent has made any reasonable effort at case plan compliance, and both parents have demonstrated a lack of commitment to the children by failing to

regularly support, visit, or communicate with the children when they are able to do so.

**{¶50}** This clear and convincing evidence leads the Court to conclude that GCJFS has made reasonable efforts to prevent removal of the children from the home throughout the course of the proceedings, but Mother and Father have not been willing or able to comply with the case plan."

**{¶51}** While the record in this matter supports each of the trial court's findings, none of these findings, individually or collectively, correspond to any of the statutory findings required by R.C. 2151.414(B)(1). This omission, however, while error, is harmless in the matter sub judice.

**{¶52}** First, appellant does not challenge the trial court's omission. And, most importantly, the record demonstrates that the children were both statutorily abandoned and in the custody of the GCJFS for 12 or more months of a consecutive 22-month period.

**{¶53}** For purposes of R.C. 2151.414(B)(1)(b), "abandoned" is defined by R.C. 2151.011(C), which provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." At the time of the hearing, on June 11, 2015, appellant had not had any contact, through visitation or otherwise, with the children since May 23, 2014, well over a year. Appellant, therefore, abandoned the children.

**{¶54}** Furthermore, the record demonstrates, at the time of the hearing, the children had been in GCJFS' custody for 22 consecutive months. This is more than sufficient to meet R.C. 2151.414(B)(1)(d). We accordingly conclude that the trial court erred in failing to memorialize an R.C. 2151.414(B)(1) finding in its judgment; the error,

12

however, was harmless because appellant did not argue the evidence was insufficient to support such a finding and the record obviously reflects two of these statutory provisions were applicable to this matter.

{¶55} With respect to the best-interest analysis, appellant argues the trial court erred in failing to consider both the wishes of the children, pursuant to R.C. 2151.414(D)(2), as well as failing to specifically consider the interaction and interrelationship of the children with appellant and any other relevant individuals.

{¶56} "The [trial] court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors." *In re Schaefer*, 111 Ohio St.3d 498, 505, 2006-Ohio-5513, ¶56. While each factor must be considered, there is not one factor that should be given greater weight. *Id.* Moreover, in considering the best-interest factors, "the trial court must adequately explain its reasoning from which to permit appellate review." *In re Ethington,* 11th Dist. Trumbull No. 98-T-0084, 1999 Ohio App. LEXIS 3419, *7 (July 23, 1999). Because R.C. 2151.414(D) guides a court's best-interest analysis, this court has repeatedly held that *every* factor must be given proper consideration. *In re B.D.*, 11th Dist. Lake Nos. 2009-L-003 and 2009-L-007, 2009-Ohio-2299, ¶104; *In re Janson*, 11th Dist. Geauga No. 2005-G-2656, 2005-Ohio-6713, ¶59; *In re Kelley*, 11th Dist. Ashtabula No. 2002-A-0088, 2003-Ohio-194, ¶24; *In re Alexander*, 11th Dist. Trumbull No. 96-T-5510, 1997 Ohio App. LEXIS 5742, *7 (Dec. 19, 1997). Therefore, a "juvenile court's judgment entry that discusses some -- *but not all* -- of the factors listed in R.C. 2151.414(D) must be reversed." (Emphasis added.) *In re Hommes*, 11th Dist. Ashtabula No. 96-A-0017, 1996 Ohio App. LEXIS 5515, *4 (Dec. 6, 1996); *Janson*, *supra*; *In re B.D., supra* ("the trial court must discuss, in its judgment entry, each of the

13

R.C. 2151.414(D) factors when reaching a determination concerning the best interest of the child and the failure to do so constitutes prejudicial error.") *See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994) ("[t]he court is required by the statute to find, by clear and convincing evidence, that certain criteria have been met, and the court must state those findings on the record, such that it is clear to all parties that the decision is supported by the facts.") In short, the provisions of R.C. 2151.414(D) are mandatory and "must be scrupulously observed." *Hommes*, *supra*, *4.

{¶57} In this case, the trial court drew the following summary conclusion relating to the children's best interests: "The Court finds that granting the Motion for Permanent Custody is in the best interests of the children, and the motion is hereby granted." This determination, while perhaps supported by the record, neither discusses the R.C. 2151.414 factors nor connects the facts of this case to those factors. For this reason, the matter must be reversed and remanded for the limited purpose of permitting the trial court to engage in the necessary statutory analysis.

{¶58} Appellant's first assignment of error has merit.

{¶59} Appellant's third assignment of error states:

{¶60} "Appellant was denied the effective assistance of trial counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."

{¶61} Appellant argues her trial counsel was ineffective for failing to object to the lack of any evidence relating to the children's wishes. We do not agree.

{¶62} When presented with a claim of ineffective assistance of counsel in proceedings to terminate parental rights, Ohio courts apply the two-prong test set forth

14

in *Strickland v. Washington*, 466 U.S. 668, 685 (1984). *In re Ridenour*, 11th Dist. Lake Nos. 2004-L-168, 2004-L-169, and 2004-L-170, 2005-Ohio-349, ¶9. To demonstrate ineffective assistance of counsel, a party "* * * must show that counsel's performance was deficient and * * * that the deficient performance was so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *In re Colbert*, 11th Dist. Ashtabula No. 2000-A-0028, 2000 Ohio App. LEXIS 5249, *7 (Nov. 9, 2000).

{¶63} The GAL's final report includes a section captioned "Wishes of Child(ren)" Under this rubric, the GAL states:

{¶64} "The children are thriving. [The children's step siblings] are currently living with [their father] in his parents' home and are well adjusted; [the children] remain with foster parents and like visiting [their step siblings, "Daddy" and "grandma" at [the step-siblings' father's home] for a few hours on Saturday. P.O. expressed she likes her new school."

{¶65} In a previous report, filed in January 2014, the GAL further emphasizes that "the children are happy in their foster home and are thriving."

{¶66} Moreover, each of the children had separate counsel to represent their rights and interests at the permanent custody hearing. Counsel for each child noted they have been in custodial limbo for some time and the children desperately need stability and permanency as soon as possible. Although these points were not conveyed directly by the children, counsel can be viewed as a mouthpiece of the children's wishes. These wishes were represented on record and advocated for at the hearing.

15

{¶67} Given the foregoing, there was evidence of the children's wishes placed on record and appellant's lack of objection cannot be viewed as unreasonable. We discern no deficient performance and thus conclude appellant has failed to meet her burden under *Strickland*.

{¶68} Appellant's final assignment of error lacks merit.

{¶69} For the reasons discussed above, this matter is affirmed in part, reversed in part, and remanded. Appellant's first assignment of error has limited merit and, as a result, the matter must be reversed and remanded for the narrow purpose of allowing the trial court to conduct a full, statutory best-interest analysis in light of the testimony and evidence submitted at the hearing. Appellant's remaining arguments and assigned errors are without merit.

TIMOTHY P. CANNON, P.J., concurs,

COLLEEN MARY O'TOOLE, J., dissents, Dissenting Opinion to follow.

16