[Cite as *In re L.S.*, 2019-Ohio-1598.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| L.S., JR., S.S., AND A.S., | | |
| NEGLECTED CHILDREN. | : | |
| | | **CASE NOS. 2018-A-0084** |
| | : | **2018-A-0085** |
| | | **2018-A-0086** |

Civil Appeals from the Ashtabula County Court of Common Pleas, Juvenile Division. Case Nos. 2016 JC 00211, 2016 JC 00212 and 2016 JC 00213.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092; *Margaret A. Draper*, Assistant Prosecutor, ACCSB, 3914 C Court, Ashtabula, OH 44004 (For Appellee Ashtabula County Children Services Board).

*Barbara J. Rogachefsky*, Barbara J. Rogachefsky Co., LPA, 12 East Exchange Street, 5th Floor, Akron, OH 44308 (For Appellant Amy Smith).

*Eileen Noon Miller*, Law Offices of Eileen Noon Miller, LLC, P.O. Box 1681, 6900 Sutherland Court, Mentor, OH 44060 (Guardian ad litem).

TIMOTHY P. CANNON, J.

{¶1}     Appellant, Amy Smith, appeals from the September 19, 2018 judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, terminating appellant's parental rights and granting permanent custody of her children to appellee, Ashtabula

County Children Services Board ("ACCSB"). This matter concerns the consolidated cases of appellant's three minor children: L.S., Jr.; S.S.; and A.S. The children's father was also permanently divested of his parental rights. At issue on appeal is whether the trial court abused its discretion and whether appellant was denied her constitutional right to effective assistance of counsel. The judgment is affirmed.

{¶2} On September 26, 2016, ACCSB obtained emergency temporary custody of the three children, who were ages nine, eight, and three. In a complaint filed September 27, 2016, ACCSB alleged the children were neglected, pursuant to R.C. 2151.03(A)(3). A shelter care hearing was held, at which the magistrate determined probable cause existed to continue temporary custody with ACCSB. The children were residing with appellant under poor conditions; the school-aged children had not been enrolled in school since at least April 2016; and there was a concern of drug use by both parents.

{¶3} Both parents appeared with counsel at the adjudicatory/dispositional hearing and stipulated to a finding of neglect. The magistrate found the children's previously unmet medical, dental, and educational needs were being met in foster care. A case plan was adopted, and temporary custody continued. The case plan required both parents to improve their parenting skills, address any mental health issues identified by an assessment, and resolve the issue of unstable and inappropriate housing. The case plan also identified concerns of drug use after both parents tested positive for methamphetamine and father tested positive for opiates.

{¶4} Visitation was suspended, in part due to allegations that the parents had provided the children with a cell phone used to contact them at all hours of the day and night.

{¶5} At the semi-annual review hearing, the magistrate found ACCSB had made reasonable efforts to finalize the children's permanency plan. The three children resided together at a therapeutic foster home. The two oldest children were behind educationally, and the youngest child was being evaluated for developmental delays. Two of the children had been diagnosed with fetal alcohol syndrome, speech articulation disorder, and other conditions. They all had extensive medical, dental, occupational, and other therapeutic and treatment needs.

{¶6} The magistrate found the extent of the parents' compliance with the case plan was "minimal." Both parents submitted to mental health assessments but had not followed through on the recommendation for counseling. They reported disability income of SSI as their sole income. They reported they were living in a camper in Pennsylvania but did not provide proof of rent or utilities. The parents attended only one parenting class, age appropriate to the oldest two children. Appellant's most recent drug test was positive for methamphetamine; father tested positive for methamphetamine, amphetamine, morphine, and opiates.

{¶7} During the summer of 2017, visitation was again suspended due to an ongoing issue of bedbugs being introduced into the foster home following each supervised visit with the parents. The parents were permitted to contact the children via telephone and video conferencing.

{¶8} An annual review hearing was held September 25, 2017. The magistrate again found the extent of the parents' compliance with the case plan was "minimal." Both parents completed two age-appropriate parenting classes. Appellant started drug and alcohol treatment but was discharged for violating the treatment contract. Father completed a drug and alcohol assessment but did not follow through with the recommended detox and treatment. Neither parent complied with the recommendations received from their mental health assessments. The housing situation remained unstable and unclear: appellant claimed to live in both Ohio and Pennsylvania; father reportedly lived in a camper in Pennsylvania. The children continued to receive all necessary services and treatment in foster care, and temporary custody was extended for another six months.

{¶9} On January 9, 2018, ACCSB filed a motion requesting modification of temporary custody to permanent custody.

{¶10} By April 2018, due to behavioral issues, L.S., Jr. was no longer in the same foster home as his two younger siblings. The three children were visiting each other on a weekly basis. None of the children were in a foster-to adopt placement.

{¶11} The originally scheduled permanent custody hearing was continued for additional time to investigate the possibility of legal custody of L.S., Jr. to a non-relative kinship placement. When this placement was disrupted due to the physical health of the custodian, the permanent custody hearing was held on August 2, 2018. At the time of the hearing, L.S., Jr. was eleven years old; S.S. was ten years old; and A.S. was five years old.

{¶12} Father appeared with counsel and stipulated to a finding that he failed to meet his case plan requirements within a two-year period. He continued to lack suitable housing and failed to demonstrate sobriety, mental health stability, or an ability to parent. Father was excused from the hearing upon his request.

{¶13} Appellant was incarcerated in Pennsylvania at the time of the hearing. She appeared and testified telephonically, with counsel present, and offered the testimony of her parents. ACCSB, through the prosecuting attorney, presented the testimony of caseworkers Dana Berry and William Fain. The guardian ad litem submitted her report, as well as an addendum, in which she recommended it is in the best interests of the children to be placed in the permanent custody of ACCSB. The guardian ad litem also testified, over appellant's objection, as to her recommendation.

{¶14} On September 19, 2018, the trial court granted ACCSB's motion for permanent custody and terminated the parental rights of both parents. All three children were ordered committed to the permanent custody of ACCSB.

{¶15} Appellant noticed a timely appeal and asserts two assignments of error for our review, which we consider out of order.

{¶16} Her second assignment of error states:

> The Trial Court abused its discretion when in granting permanent custody to ACCSB the Court found that permanent custody was the only means of providing the children a legally secure placement pursuant to R.C. 2151.414(D).

{¶17} The trial court must apply a two-pronged analysis when ruling on a motion for permanent custody. Pursuant to R.C. 2151.414(B)(1), the trial court may grant permanent custody of a child if the court determines at the hearing, by clear and

5

convincing evidence, (1) that one of the factors enumerated in (B)(1)(a-e) applies and (2) that it is in the best interest of the child to do so.

{¶18} The trial court concluded that (B)(1)(d) applies: "The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period[.]" Alternatively, the trial court found, pursuant to (B)(1)(a), that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." Neither of these conclusions are challenged on appeal.

{¶19} With regard to the best-interest prong, R.C. 2151.414(D)(1) provides that "the court shall consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶20} At the close of the evidence at the permanent custody hearing, appellant's counsel requested that, instead of terminating appellant's parental rights, the trial court allow additional time for ACCSB and the guardian ad litem to more fully investigate the maternal grandparents as potential legal custodians. The trial court did not do so. In its judgment, the trial court considered each of the best interest factors and concluded it was in the children's best interests to grant permanent custody to ACCSB.

{¶21} Appellant's assignment of error solely relates to the trial court's determination under R.C. 2151.414(D)(1)(d). The trial court found:

> As reflected in the Guardian ad litem's report and evidence presented, the children need a legally secure placement and such a legally secure placement cannot be achieved without a grant of permanent custody to the agency. None of the current foster homes have expressed an interest in adopting these children. Possible adoptive homes continue to be investigated with a commitment to attempt to keep have [sic] the children adopted together as a family unit.

Thus, the court concluded, "the evidence is clear and convincing that a legally secure permanent placement of the children cannot be achieved without a grant of permanent custody to ACCSB."

{¶22} Appellant argues it was an abuse of the trial court's discretion not to allow the time needed to determine if placement with the maternal grandparents was possible. She asserts that granting custody to ACCSB in this situation does not provide the children with a legally secure permanent placement and that placement of the children with the maternal grandparents may be their best chance for a permanent home and for reunification with each other.

**{¶23}** Appellee responds that the trial court did not abuse its discretion by denying appellant's request for additional time because the maternal grandparents had not demonstrated a commitment to the children and were not aware of their specific needs. Appellee maintains that granting permanent custody to ACCSB was necessary in order to maintain stable and sanitary housing and to secure education and proper medical care for the children. Further, it asserts that a grant of permanent custody to ACCSB does not prevent the maternal grandparents from seeking to adopt the children.

**{¶24}** We agree with appellee. Permanent custody of the children was granted to ACCSB nearly two years after they were removed from the home. The trial court found that, prior to the filing of the motion for permanent custody, the children had been in the temporary custody of ACCSB for 420 days—or 1 year, 1 month, and 25 days—a calculation that is not challenged on appeal. This amount of time exceeds the statutorily required period of 12 of 22 consecutive months. *See* R.C. 2151.414(B)(1)(d).

**{¶25}** Within this time period, the maternal grandparents did not file a motion for legal custody of any of the children. They did not attempt to have any contact with the children during this time and did not contact ACCSB about obtaining legal custody until approximately two weeks prior to the permanent custody hearing.

**{¶26}** Both maternal grandparents testified they knew the children had been removed from the home in 2016 and had remained in the temporary custody of ACCSB, but they did not come forward to care for the children. Grandmother testified this was because appellant claimed she was complying with her case plan and had told ACCSB the grandparents were willing to care for the children. She also testified it had not occurred to her to seek custody until she was contacted by appellant's attorney regarding

8

the permanent custody hearing. Grandmother stated they receive Social Security and welfare benefits. She stated they could not afford to file a motion for legal custody until the following Friday when they would receive a check.

{¶27} Grandmother testified that she is willing to provide for the children's needs but admitted she is not aware of their specific needs or what is required to care for them. She was also questioned about the home in which the children lived prior to their removal. Grandmother testified that she had not identified any concerns with the housing; it was her opinion that it was "country" living, as opposed to a "city" home.

{¶28} Ms. Berry, the initial caseworker, testified that the maternal grandparents never contacted her and that neither parent ever indicated the maternal grandparents were a possible placement for the children.

{¶29} Mr. Fain, the subsequent caseworker, testified that when the maternal grandparents contacted him just prior to the hearing, he investigated their possible placement. Mr. Fain discovered that Grandmother had a history with ACCSB and that each grandparent has a criminal conviction.

{¶30} The guardian ad litem testified that throughout all of her discussions with appellant, she was never made aware that appellant had any kind of relationship with the maternal grandparents. She also never heard the children mention any grandparent other than their paternal grandfather. The guardian ad litem offered that, while "no one takes delight in taking permanent custody of these children," the maternal grandparents have not represented a commitment to the children by waiting nearly two years to declare an interest in them. If they so desire, the guardian stated, they may choose to file for adoption once permanent custody is granted.

9

**{¶31}** Rather than allowing the children to continue to languish in the temporary custody of ACCSB, the trial court concluded that, consistent with the best interests of the children, a legally secure permanent placement could only be achieved with a grant of permanent custody to ACCSB. The evidence relied on in support of this conclusion is clear and convincing.

**{¶32}** Under these circumstances, it was not an abuse of discretion for the trial court to proceed to terminate parental rights without allowing additional time to further investigate the maternal grandparents as a possible placement. Based on the testimony presented at the hearing, it was reasonable for the trial court to determine that additional time would not result in a legally secure placement with the maternal grandparents. "'In determining the best interest of the child, there must be a point of finality where a child can no longer be kept in an uncertain and disruptive environment for an indeterminable amount of time. The child must be given the opportunity to find permanence and stability.'" *Maye v. Maye*, 10th Dist. Franklin No. 99AP-529, 2000 WL 552194, *4 (May 4, 2000), quoting *In re Swisher*, 9th Dist. Summit No. 17879, 1997 WL 164311, *3 (Apr. 2, 1997) (citation omitted).

**{¶33}** Appellant's second assignment of error is without merit.

**{¶34}** Her first assignment of error provides:

> Amy Smith was denied her fundamental and constitutional right to effective assistance of counsel as made applicable to the states by and through the Fourteenth Amendment to the U.S. Constitution.

**{¶35}** "Where the state institutes proceedings to force the permanent, involuntary termination of a parent's right in respect to their children, the parent is guaranteed effective assistance of counsel by the due process clauses of the United States and Ohio

10

Constitutions." *In re Ridenour*, 11th Dist. Lake Nos. 2004-L-168, *et seq.*, 2005-Ohio-349, ¶9 (citations omitted). "The two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) is to be used when addressing ineffective assistance of counsel claims in cases involving the termination of parental rights. Accordingly, appellant must show that counsel's performance was deficient and, in addition, that the deficient performance was prejudicial." *In re D.H.*, 11th Dist. Geauga No. 2009-G-2882, 2009-Ohio-2798, ¶76, citing *Ridenour, supra*, at ¶9-10. Prejudice exists when there is a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. *In re Roque*, 11th Dist. Trumbull No. 2005-T-0138, 2006-Ohio-7007, ¶11, citing *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶36} Appellant asserts her trial counsel was ineffective in failing to request a six-month extension of temporary custody, pursuant to R.C. 2151.415(D)(1). Appellee responds that R.C. 2151.415(D)(1) does not provide a procedure for parents or parties other than a public children services agency or private child placing agency to request an extension of temporary custody. R.C. 2151.415(D)(1) provides:

> *If an agency pursuant to division (A) of this section requests* the court to grant an extension of temporary custody for a period of up to six months, *the agency shall include in the motion* an explanation of the progress on the case plan of the child and of its expectations of reunifying the child with the child's family, or placing the child in a permanent placement, within the extension period. * * * The court may extend the temporary custody order of the child for a period of up to six months, if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension. * * * [Emphasis added.]

11

*See also In re L.R.R.*, 11th Dist. Portage No. 2017-P-0060, 2018-Ohio-1446, ¶23 ("While R.C. 2151.415 allows PCDJFS [the agency] to seek two separate six-month extensions of temporary custody, it does not provide such a procedure for parents or other parties.").

**{¶37}** Appellant, in her reply brief, abandons R.C. 2151.415(D)(1) and instead relies on R.C. 2151.417 in support of her argument. In *L.L.R.*, this court recognized that "R.C. 2151.417(C) provides for a trial court to hold review hearings in matters where a dispositional order has been issued." *Id.* at ¶24. "Pursuant to R.C. 2151.417(G)(3)(c), following a review hearing, a court can take various actions, including, '[i]f the child cannot or should not be returned home with an order for protective supervision," making a determination that "the agency currently with custody of the child should retain custody or * * * an individual should be given custody of the child.'" *Id.*

**{¶38}** Contrary to the assertion in appellant's reply brief, however, we did not hold in *L.L.R.* that a parent is permitted to seek an extension of temporary custody under R.C. 2151.417. The context of *L.L.R.* was the mother's assertion that the trial court abused its discretion in awarding legal custody to a third party rather than extending the agency's temporary custody. We merely stated: "Presuming this statute applies to the facts of the present case and would provide the trial court an avenue to extend [the agency's] temporary custody, it does not mandate such action." *Id.* at ¶25. This statement does not support appellant's argument.

**{¶39}** Appellant has not cited any statutory provision or case law that explicitly provides her with an avenue to extend ACCSB's temporary custody. Further, albeit informally, trial counsel did request additional time at the conclusion of the permanent

12

custody hearing. We therefore conclude appellant has not shown that her trial counsel's performance was deficient in failing to request a six-month extension.

{¶40} Appellant also has not shown that, if such an extension had been requested, a reasonable probability exists that the result of the proceedings would have been different. Appellant merely asserts "it is entirely possible" the trial court would have granted such a request. Further, her argument that a six-month extension would have provided sufficient time for appellant to comply with her case plan or for the maternal grandparents to obtain legal custody is wholly conjectural. The record weighs heavily against such a conclusion and does not indicate appellant was prejudiced by the lack of a six-month extension of temporary custody.

{¶41} Appellant has not demonstrated that she was denied her constitutional right to the effective assistance of counsel.

{¶42} Appellant's first assignment of error is without merit.

{¶43} The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

13